IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

KIMBERLY GODOY,

Plaintiff,

v.

BMW OF NORTH AMERICA, LLC,

BMW MANUFACTURING, CO. LLC,

ZF TRW AUTOMOTIVE HOLDINGS CORP.,

AUTOLIV, INC. and

AUTOLIV ASP, INC.

Defendants.

Civil Case No
16-CV-05502
(DRH)(SIL)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS FOR LACK OF PERSONAL
JURISDICTION**

Dino G. Amoroso

Amoroso & Associates, P.C.
43 West 43rd Street, Suite 500
New York, N.Y. 10036
Telephone: (212) 709.8031
Facsimile: (212) 943.2300

Attorneys for Plaintiff
Kimberly Godoy

# TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY OF ARGUMENT

    A. The Standard of Review under Fed, R, Civ, P 12(b)(2)

    B. The Applicable Legal Framework – A Two Part Inquiry

        1. Part One: The Defendant's Amenability to Suit Under New York State Laws

            a. General or Jurisdiction

            b. Specific Jurisdiction

        2. Part Two: The Constitutional Inquiry

II.  BACKGROUND

    A. The Nature of the Action

    B. Defendant's Interlocking Business Relationships

III. ARGUMENT

    A. The Plaintiff Need Only Make Out a *Prima Facie* Case In Order to Defeat ZF TRW AH Motion to Dismiss

    B. ZF TRW AH and TRW LLC Transact Substantial Business in this District and ZF Controls Them

    C. A Substantial Quantity of TRW Automotive Holdings Corp Products Were Sold in the District of New York

    D. ZF, the Parent Company, admits it Controls Both TRW LLC and Defendant

        1. ZF TRW AH and TRW LLC Are Part of An Integrated Enterprise

        2. ZF Has the Capacity to Influence Its Subsidiaries' Major Business Decisions

        3. ZF TRW and TRW LLC's Finances Are Intertwined With the Parent Company, ZF

        4. ZF Has Created a Single Corporate Image that Subsumes Its' Subsidiaries

        5. A Subsidiary's Adherence to Corporate Formalities Does Not Imply An Absence Of Control by the Parent Company

IV. CONCLUSION

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016)

*Chrysler Corp. v. Gen. Motors Corp.*, 589 F. Supp. 1182 (D.D.C. 1984)

*Crane v. New York Zoological Soc'y*, 894 F.2d 454 (D.C. Cir. 1990)

*Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359 (1927)

*Goodyear Dunlop Tires Organizations, S.A. v. Brown*, 564 U.S. 915 (2011)

*In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. Lexis 25073 (D.D.C. Oct. 30, 2001)

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)

*Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012)

*MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)

*MCI Communication Corp. v. AT&T*, 1983-2 Trade Cas. (CCH) 652 (D.D.C. 1983)

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).

*Second Amendment Found. v. US Conference of Mayors*, 274 F.3d 521 (D.C. Cir. 2001)

*Shaipiro Lifschitz & Schram v. Hazard*, 24 F. Supp. 2d 66 (D.D.C. 1998)

*Tiger Trash v. Browning Ferris Indus., Inc.*, 560 F.2d 818 (7th Cir. 1977)

*United States v. Scophony Corp.*, 333 U.S. 795 (1948)

**Statutes**

Fed. R. Civ. P. 12(b)(2)

New York Civil Practice Law and Rules § 301

New York Civil Practice Law and Rules § 302

Plaintiff, Kimberly Godoy ("Plaintiff"), respectfully submits this memorandum of law and authorities in opposition to the Motion to Dismiss for Lack of Personal Jurisdiction filed by ZF TRW Automotive Holdings Corp. ("Defendant" or "ZF TRW AH").

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Discovery in the matter has not begun and this motion is premature.

Plaintiff intends to request jurisdictional discovery. Certainly "[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery[.]" *Second Amendment Found.*, 274 F.3d 521, 525. Only after jurisdictional discovery, if the defendant persists in challenging personal jurisdiction, would the Plaintiff have to establish personal jurisdiction by a preponderance of the evidence. *See Shapiro Lifschitz & Schram v. Hazard*, 24 F. Supp. 2d 66, 70 (D.D.C. 1998).

Plaintiff has a good faith basis to believe that when discovery is complete the Plaintiff will be able to establish that ZF TRW AH, is the subsequent successor-in-interest to TRW Inc., who manufactured the airbags in this action, which caused of the Plaintiff's injuries. Those injuries occurred in New York State, and were a result of a manufacturing defect in those airbags or its electronic components. Additionally, Plaintiff believes it can demonstrate that, at the time of the airbag manufacture, TRW Inc. was amenable to suit in New York State.

Based on a review of publicly available records, Plaintiff believes that after discovery it will be able to show that ZF TRW AH controls and directs the activities of the wholly owned subsidiary, TRW Automotive LLC, which operates a manufacturing plant in New York State, satisfying New York's long arm statute.

Therefore, Defendant's motion is premature and should be held in abeyance until the completion of discovery in this matter.

### A.  The Standard of Review under FED. R. CIV. P. 12(b)(2)

Rule 12(b)(2) authorizes a party to seek dismissal on the ground that the Court lacks personal jurisdiction over him. The Plaintiff that bears the burden of showing that personal jurisdiction exists over the Defendant. *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." Id. (*citing Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), cert. denied, 498 U.S. 854, 111 S. Ct. 150, 112 L. Ed. 2d 116 (1990)). In doing so, "the plaintiff need only make a prima facie showing," and "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)).

1

### B. The Applicable Legal Framework

In resolving questions of personal jurisdiction in a diversity action, the Court must conduct a two-part inquiry: "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." *See Metropolitan Life Ins. Co.*, 84 F.3d at 567.

#### 1. Part One: The Defendant's Amenability to Suit under New York's Laws

First, the Court must determine whether, under the facts and circumstances of a given case, New York law supports the exercise of either general jurisdiction (also called "all-purpose jurisdiction") or specific jurisdiction (also called "case-linked jurisdiction"). *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). General jurisdiction "permits a court to adjudicate any cause of action against the [ ] defendant, wherever arising, and whoever the plaintiff," while specific jurisdiction is only "available when the cause of action sued upon arises out of the defendant's activities in [the] state." Id. *(citing Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010)).

##### a. General Jurisdiction

The authority for New York courts to exercise general jurisdiction over a non-domiciliary is found in New York Civil Practice Law and Rules ("CPLR") § 301, which provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." This provision has been interpreted as authorizing jurisdiction over non-domiciliaries "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Organizations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

##### b. Specific Jurisdiction

By contrast, the statutory basis for specific jurisdiction is found in New York's long-arm statute, which, as to causes of action specifically arising from the Defendant's conduct in the state, allows the Court to exercise personal jurisdiction over a non-domiciliary who: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or 3. commits a tortious act without the state causing injury to a person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or 4. owns, uses or possesses any real property situated within the state. CPLR § 302(a).

2

### 2. Due Process Inquiry

"Whether specific or general, . . . the exercise of personal jurisdiction over a defendant is informed and limited by the U.S. Constitution's guarantee of due process." *Brown*, 814 F.3d at 625. Thus, if the requirements of CPLR § 301 or § 302 are satisfied, the Court must address whether the exercise of jurisdiction comports with the Due Process Clause. *See Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (citations omitted). "The constitutional analysis under the Due Process Clause consists of two separate components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." Id. at 60 (*quoting Chloé*, 616 F.3d at 164). As the Second Circuit has explained: The "minimum contacts" inquiry requires us to consider "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." [*Chloé*, 616 F.3d at 164.] The "reasonableness" inquiry requires us to decide "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' – that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." Id. *Licci*, 673 F.3d at 60.

With these legal principles in mind, the Plaintiff believes that, after discovery, it can establish that this Court will be able to exercise both general and case subject jurisdiction over Defendant.

## II.   CASE BACKGROUND

### A.   The Nature of the Action

This is a civil action arising from the substantial physical injuries Plaintiff sustained when, without cause, the airbags in her 2000 BMW Model 528i (the "Vehicle") deployed on July 10, 2015. These airbags were installed in the vehicle by its manufacturer, BMW Defendants, and were manufactured by TRW, Inc. and Autoliv, Inc., when the car was manufactured in 2000. This spontaneous deployment caused Plaintiff to suffer serious physical injury and significant pain and suffering.

### B.   Defendant's Interlocking Business Relationships

Defendant, ZF TRW Automotive Holdings Corp., (ZF TRW AH) is a holding company headquartered in Livonia, Michigan, and incorporated in the State of Delaware. It was served with the summons and complaint in Michigan. It seeks dismissal from this action on grounds that it is not subject to the personal jurisdiction of this Court.

ZF TRW AH avers that it merely holds stock in various subsidiaries owned by its parent company ZF Friedrichshafen AG ("ZF"). Public filings demonstrate that these subsidiaries were acquired by the parent company in 2015 through its purchase of TRW Automotive, Inc., from The Blackstone Group LP. Upon the purchase of the company, ZF restructured the company into seven divisions. Those seven divisions control, manage operate and direct wholly owned subsidiary companies that design, research, manufacturer, market and sell ZF TRW products, including the passive and active auto safety systems and electronic components at issue in the

present matter. ZF TRW AH states that it does not have any business contacts with New York State.

The law provides that a defendant cannot evade personal jurisdiction simply by transacting business only through numerous wholly-owned or controlled subsidiaries. *United States v. Scophony Corp.*, 333 U.S. 795 (1948). Thus, Defendant's argument that it no presence in New York State sufficient to justify personal jurisdiction is without merit, when its parent company operates at least one manufacturing facility in the State, which stock is presumably held by Defendant. *See* www.zf.com/corporate

To defeat a motion challenging personal jurisdiction, a plaintiff need only establish a *prima facie* case that such jurisdiction exists. *Second Amendment Found. v. United States Conference of Mayors*, 274 F. 3d 521, 524 (D.C. Cir. 2001); *Crane v. New York Zoological Soc'y*, 894 F.2d 454, 458 (D.C. Cir. 1990). Plaintiff more than meets its burden by demonstrating that ZF TRW AH transacts business in this district through certain wholly-owned subsidiaries of parent company ZF, whose products are sold to motor vehicle manufacturers, who in turn install these components into their automobiles and sell them in New York State.

For these reasons defendant's motion should be denied, or adjourned until discovery is completed.

### III.     ARGUMENT

#### A.     The Plaintiff Need Only Make Out a *Prima Facie* Case of Jurisdiction In Order to Defeat ZF TRW AH's Motion for Dismissal

To defeat a motion challenging personal jurisdiction, a plaintiff need only establish a *prima facie* case that such jurisdiction exists. *Second Amendment Found. v. United States Conference of Mayors*, 274 F. 3d 521, 524 (D.C. Cir. 2001); *Crane v. New York Zoological Soc'y*, 894 F.2d 454, 458 (D.C. Cir. 1990).

The law is clear that any suit, action, or proceeding against a corporation may be brought, not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or in which it transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or where it may be found.

A corporation "transacts business" in a district "if, in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character." *Eastman Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 47 S.Ct. 400, 71 L. Ed. 684 (1927). The test of venue has been described as the practical, everyday business or commercial concept of doing or carrying on business "of any substantial character." *United States v. Scophony Corp.*, 333 U.S. 795, 807, 68 S.Ct. 855, 861, 92 L. Ed. 1091 (1948).

In 2000, when Plaintiff's vehicle was manufactured, the predecessor corporation TRW Inc., clearly conducted business within New York State. Its products were installed as OEM (original equipment manufacturer) components in automobiles sold throughout New York State.

As was stated in TRW Automotive Holding Corp.'s 2004 Security and Exchange Commission (SEC) filings, eighty-five percent of the company's production of auto components were installed in new automobiles for such manufacturers as Ford, Daimler-Chrysler and Volkswagen. Plaintiff also believes has a good faith basis for believing that TRW Inc.'s replacement automotive products were sold directly to consumers throughout New York State in retail auto part stores, such as Pep Boys, AutoZone and NAPA, and installed in countless vehicles brought into auto repair shops throughout the state.

### B.  ZF TRW AH and TRW LLC Transact Substantial Business in This District and ZF Controls Them.

The Defendant's parent company, ZF Friedrichshafen AG (ZF), is a German corporation with its business headquarters located in Friedrichshafen, Germany.

ZF is one of the world's largest designers and manufacturer of air bags and passive safety restraints and is a vertically integrated enterprise. ZF maintains a corporate web presence through a website (www.zf.com). The home page of the website shows the ZF name and logo, with various products produced and manufacturing subsidiaries listed on the website page. ZF website, at *hhtps://www.zf/corporate/* (last visited September 25 7, 2017). Those subsidiaries include businesses physically located in New York State.

In 2105, ZF purchased 100% of TRW Automotive, Inc. shares. At the time, TRW Automotive, Inc. was a United States based corporation with a Michigan corporate headquarters that operated manufacturing plants and R&D facilities throughout the United States, including New York State. Among the products TRW Automotive produced were passive and active safety restraints, such as air bags, for motor vehicles. After the purchase, the new company was renamed ZF TRW Automotive Holdings (ZF TRW AH).

After this 2015 purchase, ZF created seven business units: Car Powertrain Technology; Car Chassis Technology; Commercial Vehicles Technology; Industrial Technology; E-Mobility; ZF Aftermarket, and Active and Passive Safety Technology, through which it conducts business and maintains its operations. See www.zf.com/corporate

ZF TRW AH is a wholly owned subsidiary of ZF and operates as a holding company for ZF's American-based operations.

TRW Automotive U.S. LLC (TRW LLC) is located in Auburn, NY and Plaintiff reasonably believes, based on public records, that it is a wholly owned subsidiary of the ZF TRW AH's parent company, ZF. TRW LLC operates manufacturing facilities in New York and other states. The New York State facility employs over 300 individuals and produces component parts for active and passive safety technology marketed and sold by ZF, which includes the airbags that are the basis of this litigation.

As shown with more particularity below, ZF owns, controls and actively manages its wholly owned subsidiaries, including ZF TRW AH and TRW LLC. Upon information and belief, ZF TRW AH transacts significant business with ZF's subsidiaries, including TRW LLC.

Hence, the law treats ZF TRW AH as transacting business in the State of New York and it is subject to the personal jurisdiction of this Court. *See In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. Lexis 25073, at *24 (D.D.C. Oct. 30, 2001). Such contacts create the requisite "minimum contacts" with the judicial forum (New York State) such that assuming jurisdiction over it satisfies the core demand of due process: that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### C. A Substantial Quantity of TRW Products Are Contained in Motor Vehicles That Were Sold in New York State from 2000 to present

In 2000, TRW, Inc., predecessor in interest to TRW Automotive Holding Corporation, was in the business of designing, manufacturing and producing passive and active safety restraints components and systems that were marketed, sold and distributed to automobile manufacturers throughout the United States, including to defendants BMW. These passive and active safety restraints components and systems were ultimately installed in automobiles that entered the stream of commerce through multiple auto dealerships in New York State.

The TRW brand of air bags and passive restraint systems were ubiquitous, well-recognized and were installed in high volumes in numerous motor vehicle brands that were sold in the State of New York.

Contrary to the Defendant's claim, that it did not supply any content for the 2000 BMW Model 528i, defendants BMW, upon inspection of the subject Vehicle, found and determined that TRW airbags were, in fact, installed in the rear door panels of the subject Vehicle.

In 2002, Northrup Grumman, which had purchased TRW Inc., sold that portion of TRW, Inc.'s business that developed and manufactured automotive parts and components, including the air bags at issue herein, to The Blackstone Group LP (Blackstone). In 2004, Blackstone made an initial public offering for the newly renamed company, TRW Automotive Holding Corp., and traded on NASDAQ.

In its 2004 SEC filing, TRW Automotive Holding Corp, stated that it was among the world's largest and most diversified suppliers of automotive systems, modules and components to global automotive original equipment manufacturers, or OEMs, and related aftermarkets, conducting substantially all of its operations through subsidiaries. TRW Holding Corp., SEC S-3 filing, March 23, 2005, page 1. The company went on to state, "[w]e are primarily a "Tier 1" supplier, with over 85% of our sales in 2004 made directly to OEMs." The company also admitted that it was significantly involved in vehicle design process. "Automotive suppliers like us are becoming more integrally involved in the vehicle design process and are assuming more of the vehicle system design responsibility." TRW Holding Corp., SEC S-3 filing, March 23, 2005, page 2.

In 2015, ZF Friedrichshafen AG purchased all outstanding shares of TRW Automotive Holding Corp, renaming the company ZF TRW American Holding Corp., (ZF TRW AH). As a

successor in interest to TRW Automotive Holding Corp, ZF TRW AH has liability for the manufacturing defects in its products, which form the foundation of Plaintiff's claims.

### D.  ZF, the Parent Company of Defendant Admits It Controls both TRW LLC and Defendant.

First, ZF admits on its website that it operates a manufacturing location in Auburn, New York. In addition, in public documents ZF admits it owns 100% of the Defendant.

The actual volume of current and historic sales and revenues generated in N.Y. is known only to ZF TRW; however, based on the number of employees, products and automobiles sold in the State of New York the numbers cannot be insubstantial.

Second, Plaintiff shows that ZF exercises control over its subsidiaries, including those whose products are manufactured in New York, by retaining the capacity to influence their major business decisions; supervising their activities; and integrating the family of companies into a functional whole. Plaintiff therefore meets the standards for establishing personal jurisdiction over ZF TRW in this district.

#### 1.  ZF TRW AH and TRW LLC Are An Integrated Enterprise

Courts look to the extent of the vertical integration and coordination among subsidiaries to determine whether there is a "unified hierarchy of . . . corporations" that "have but one ultimate master." *Chrysler Corp. v. Gen. Motors Corp.*, 589 F. Supp. 1182, 1201 (D.D.C. 1984); *Vitamins*, 2001 U.S. Dist. Lexis 25073, at *31 (citing as a factor supporting jurisdiction over a parent that the family of entities were "organized according to business lines rather than separate corporate entities"); *see also Tiger Trash v. Browning-Ferris Indus.*, 560 F.2d 818, 824 (7th Cir. 1977) (finding jurisdiction proper where the parent "pursued the goal of building a nationwide waste system company primarily through the means of acquiring existing businesses with a history of successful operation.").

#### 2.  ZF Has the Capacity to Influence Its Subsidiaries' Major Business Decisions

One test of parental control over a subsidiary is whether the parent company determines the leadership of the subsidiary.

In the current case, ZF states in public documents that it operates seven divisions that form the core of its business operations. One of those divisions is the "Active and Passive Safety Division," located in North America. This division reports directly to a member of ZF's board of directors, Dr. Franz Kleiner (Dr. Kleiner). This is a strong indication of the parent's control. *See Vitamins,* 2001 U.S. Dist. Lexis 25073, at *28 (noting that executive committee of parent's board determined the membership of boards of each of the subsidiaries in determination of parental control).

7

According to Bloomberg News financial reports, Dr. Kleiner is the Chief Executive Officer of the Defendant. Dr. Kleiner is also one of the seven members of ZF's Board of Management, in Friedrichshafen, Germany. ZF's website identifies Dr. Kleiner as being responsible for the Active and Passive Safety Technology Operating Division in North America. In addition, Dr. Kleiner is listed on the ZF website as the Head of the Operating Division that includes all facilities for North America, including the Headquarters and principal operating location of ZF TRW AH located in Livonia, Michigan and TRW LLC, located in Auburn, N.Y. Both facilities are managed by management personnel that report to Dr. Kleiner.

In *Vitamins,* the court asserted jurisdiction over a parent that claimed to give its subsidiaries a broad range of autonomy, reasoning that "even if [the parent] *chooses* not to exercise control, [it] still retains the *power* to do so and ultimately has the last word with respect to [operating] decisions." 2001 U.S. Dist. Lexis 25073, at *36 (emphasis added). The court did not find the claimed autonomy of the subsidiaries sufficient to overcome the fact that the parent retained final authority to affirm or reject the subsidiary's proposals. *Id.* Here, as in *Vitamins,* ZF's status as the sole stockholder of most of its subsidiaries, and sole stockholder of one facility whose products are known to be manufactured and sold in New York, gives it the capacity to use its voting power to influence the decisions of its subsidiaries.

### 3. ZF TRW AH and TRW LLC's Finances Are Intertwined With the Parent Company, ZF

In examining the extent of vertical integration, courts consider subsidiaries' ability to utilize the parent's resources. *See Chrysler,* 589 F. Supp. at 1201. The court in *Vitamins* found it notable that the subsidiaries obtained their working capital from the parent and that "profits from the . . . subsidiaries do not stay with the subsidiaries, but rather are funneled to [the parent]." 2001 U.S. Dist. Lexis 25073, at *31, 32. *See also Tiger Trash,* 560 F.2d at 823 (giving weight to the fact that parent had allocated financial resources, provided finances, systems accounting, and set standards for return on capital investment from subsidiary). Courts also consider evidence that a parent prepares consolidated financial statements, provides loans or incurs expenses on the subsidiaries' behalf. *See MCI Communications Corp.,* 1983-2 Trade Cas. ¶ 65,652, at 69,344.

An example of ZF's close financial ties with its United States subsidiary, ZF TRW AH, comes from the substantial revenues generated by the Active and Passive Safety Division in 2016. ZF reports in its annual reported that this Division generated almost $16 billion in net revenues in 2016. *See* ZF Friedrichshafen AG, 2016 Annual Report (2016); www.zf.com/ (last visited August, 2017). Dr. Stefan Sommer, Chief Executive Officer of ZF, stated in his letter in the company's 2016 annual report that the its 2015 acquisition of TRW resulted in sales revenues "approaching €35 billion," and provided the "necessary technological and financial power," to meet their "ZF 2025 Strategy."

8

### 4. ZF Has Created a Single Corporate Image That Subsumes Its' Subsidiaries

Another factor courts consider is whether the subsidiary and its parent are partners in "world-wide business competition" and seek to present "a common marketing image." *Vitamins*, 2001 U.S. Dist. Lexis 25073, at *25 (citing *Chrysler*, 589 F. Supp. at 1201). In *Vitamins*, the court concluded that the marketing image presented to the public was one of an integrated corporation with various departments around the world rather than of separate corporate entities that function independently of one another. *Id.* at *33; *see also Tiger Trash*, 560 F.2d at 823 (noting that both parent and subsidiary conducted their advertising and promotional activities in such a manner so as to give the appearance of one company operating nationwide).

As the ZF family of subsidiaries has grown, and as the ZF website demonstrates, ZF has devoted significant effort to creating and promoting a single corporate image, identity, mission, and ethos through its marketing of the ZF and ZF TRW family of brands.

### 5. A Subsidiaries' Adherence To Corporate Formalities Does Not Imply An Absence of Control by the Parent Corporation

All that Defendant offers the Court about its relationship with its subsidiaries is that they maintain "corporate formalities," such as their own books and bank accounts, their own tax liabilities, and their own headquarters and employees. But these "corporate formalities" do not imply an absence of control by the Defendant. *See Chrysler*, 589 F. Supp. at 1200 ("[d]espite a formal separation between parent and subsidiary, where the parent exercises continuing supervision and intervention in the subsidiaries' affairs, the subsidiaries' activities are attributable to the parent." (citing *Scophony*, 333 U.S. at 814)).

Defendant also asserts that its subsidiaries are "responsible for their own day-to-day operations," operating independently and autonomously from the parent. But, again, that characterization is not inconsistent with Defendant controlling its subsidiaries for purposes of personal jurisdiction. *See Chrysler*, 589 F. Supp. at 1202. The test is not day-to-day control, it is the more practical, business concept approach, based on *Scophony's* reasoning, looking to the confluence of factors described above to determine whether "there is [an] underlying unity of purpose and direction sufficient to find that these corporations though separate, are all members of the larger [parent] family." *Chrysler*, 589 F. Supp. at 1201 (citations omitted).

## IV. CONCLUSION

Because ZF undeniably transacts business in this district through TRW LLC, Plaintiff argues that this Court has personal jurisdiction over Defendant ZF TRW AH, even though it is physically situated in Livonia Michigan.

Additionally, based primarily on publicly available information on ZF's own website, press releases and advisories and in SEC filings, Plaintiff has proffered sufficient evidence that ZF is a successor in interest to TRW, Inc.; that there is a direct line of report between Defendant ZF TRW AH and ZF; that ZF appointed ZF TRW AH's Chief Executive Officer, who also sits

9

on ZF's board; that ZF owns and controls TRW LLC in Auburn NY. Thus, Plaintiff has a good faith belief that jurisdictional discovery, which has not begun, will disclose that TRW ZF AH holds shares in the subsidiary that operates the TRW LLC's Auburn manufacturing location. Thus, upon the close of such discovery the Plaintiff will be able to demonstrate conclusively that there are substantial business contacts and activities in this district for the Court to exercise personal jurisdiction over ZF TRW AH.

Accordingly, Plaintiff respectfully requests that Defendant's motion to dismiss for lack of personal jurisdiction be denied, or in the alternative held in abeyance until the close of discovery in this matter.

Respectfully submitted

Plaintiff, Kimberly Godoy

By:_____"/s/"_____

Dino G. Amoroso
Amoroso & Associates, P.C.
43 West 43rd Street Suite 64
New York, N.Y. 10036
Telephone: (212) 709.8031
Facsimile: (212) 943.2300